### SMITH et al. v. CRAWFORD et al.

(Supreme Court, Appellate Division, First Department. December 14, 1900.)

1. NUISANCE—APPEAL—REVIEW.

The finding by the court that defendants' use of their premises as a storehouse for cheese did not constitute a nuisance, being on conflicting testimony, cannot be disturbed; there being opposed to it the testimony of two witnesses for plaintiffs, to the effect that the odor therefrom was so strong as to make occupancy of the adjoining dwelling impossible; the testimony of two health inspectors that they had several times visited defendants' premises, and found no objectionable odors; and of one of defendants, that butter was also stored on the premises, and that it was not affected, as it would be if there were any foreign odors, and that there were no objectionable odors.

2. SAME—INJUNCTION.

While the presence in the immediate locality of several stables, a blacksmith shop, and a vinegar factory cannot be considered on the question of whether the storing of cheese on defendants' premises constituted a nuisance, it may be considered in determining whether such storing should be enjoined at the suit of one owning an adjoining dwelling.

Hatch and Ingraham, JJ., dissenting.

Appeal from special term, New York county.

Action by Virginia Stuart Mackay Smith and others against Alexander Crawford and others. From a judgment dismissing the complaint after trial at special term, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Henry De Forest Baldwin, for appellants.
William E. Cook, for respondents.

McLAUGHLIN, J. The plaintiffs are the owners of a house situated at Nos. 413–415 West Seventeenth street, in the city of New

York, and they instituted this action to enjoin the defendants, who are the owners of adjoining premises, No. 411 West Seventeenth street, from storing cheese thereon, which, it was alleged, constituted a nuisance. Upon the trial it appeared that the defendants were dealers in butter and cheese, and that they stored many hundred pounds of the same in their building. On the part of the plaintiffs, several witnesses gave testimony to the effect that the cheese thus stored gave off a disagreeable and offensive odor, which rendered, to a certain extent, the premises of the plaintiffs uninhabitable. This testimony was contradicted by several witnesses called on behalf of the defendants. The learned justice before whom the trial was had reached the conclusion that the business conducted by the defendants upon their premises "is a lawful one, carried on in a lawful way and manner, and in a proper place," and "that defendants do not maintain a nuisance on their said premises"; and he thereupon dismissed the complaint upon the merits, with costs. Judgment was thereafter entered to this effect, from which the plaintiffs have appealed.

Whether or not the use of the defendants' premises constituted a nuisance was a question of fact to be determined by the trial court, and it having found, upon evidence sufficient to sustain the finding, that such use did not constitute a nuisance, this court ought not to interfere. The rule is well settled that an appellate court, in reviewing the determination of a trial court on questions of fact, when the evidence is conflicting, is not warranted in reversing merely upon the ground that in its opinion the trial court should have reached a different conclusion than it did, and that, in order to sustain a reversal on the facts, it must appear affirmatively that the decision of the trial court is against the weight of evidence, or that it can be said with a reasonable degree of certainty that the trial court erred in reaching the conclusion which it did. Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299; Baird v. Mayor, etc., 96 N. Y. 567. That the evidence here was conflicting, needs only a brief reference to the record. On the part of the plaintiffs the witness Acker testified, in substance, that prior to the time the defendants commenced to occupy their premises the atmosphere in the locality was good, but thereafter it was impregnated with an offensive smell of cheese; that it permeated the whole building standing on plaintiffs' premises, and that this odor was so strong at times that she was unable to occupy a portion of her apartment in this building; that it was substantially the same during all the time. Another witness, Ward, testified to substantially the same effect, and these witnesses were corroborated by four or five others. While, on the part of the defendants, both Dr. Allen and the witness Joffe testified that they were inspectors of the health department, and in the discharge of their official duties had several times visited the premises of the defendants; that they found no objectionable odors about them. And one of the defendants testified to the effect that the premises were used not only for the storage of cheese, but also butter; that butter absorbs any foreign odors; that the butter had not been affected; and that there were no objectionable odors about their building.

These witnesses were corroborated in some respects by other testimony, and especially to the effect that there were no obnoxious odors arising from the storing of cheese on defendants' premises. It also appeared that there was in the immediate locality several stables, a blacksmith shop, and a vinegar factory; and, while these facts could not be considered in determining whether or not the use of the defendants' premises constituted a nuisance, we are of the opinion that it was entirely proper for a court of equity to take them into consideration in determining whether or not the plaintiff was entitled to the relief sought.

We think, therefore, that, as there was sufficient evidence to sustain the finding of the trial court that the defendants did not maintain a nuisance on the premises, the judgment appealed from must be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

HATCH, J. I am unable to concur in the views expressed by Mr. Justice McLAUGHLIN in his opinion in this case. As I understand, it is not contended but that the evidence given upon the part of the plaintiffs was abundantly sufficient to show that the business, as conducted by the defendants, constituted the same a nuisance. The fact that there was, and had before existed, in more or less contiguity to the premises owned by the plaintiffs, some stables, a blacksmith shop, and a vinegar factory, does not militate against the fact that the business of the defendants, as conducted, was a nuisance. It appeared that these matters did not render the premises uninhabitable, or destroy the character of the locality as a residential neighborhood. On the contrary, the evidence upon that subject showed that these businesses were so situated and so conducted as to be innocuous. They in no sense created a nuisance, nor did they interfere with the comfortable enjoyment of the plaintiffs' premises for the purpose of habitation. The invasion of the neighborhood by the defendants, and the introduction of their cheese business therein, did, however, work a wondrous change. And, as I view this case, the working such change, and the means which accomplished it, created a nuisance. This fact, I think, appears from the testimony of the defendants. It is undisputed that, in addition to the American cheese which was stored by the defendants, they keep on hand from 500 to 5,000 pounds of Limburger cheese, about 30,000 pounds of Swiss cheese, together with considerable quantities of Brie and Roquefort cheese. It does not need proof to show that a strong, pungent, and penetrating odor issues from these compounds. The odor from Limburger cheese, when it is given fair opportunity to spread itself, is overwhelming; and unless the olfactory sense be educated to its liking, or deadened to its presence, it is about as offensive an odor as can greet the olfactory nerve of human beings. That premises are inhabitable in its continued exposed presence will not be generally believed; and, when it is combined with the odoriferousness arising from the other cheese, we can readily see that a stench can be produced, by the side of which the smell of hogpens

and slaughter houses might be regarded as delicate perfumery. It is enough to say that language fails in description of such an odor, and it is evident that the witnesses for the plaintiff were baffled in the attempt by lack of power to describe the overwhelming presence. It is testified by the defendant himself that packages containing these compounds are broken open upon the premises, are handed to the men for delivery in wagons, and are by them delivered. This breaking occurs about 7 or 8 o'clock in the morning, and the wagons are returning from 6 to 9 o'clock in the evening. It needs no occult power to understand that a small quantity of Limburger cheese, only, is necessary to fill the atmosphere with smell. We have seen a single wagon, containing a small quantity, drive people from the street along which it passed; and we can readily understand that by constant use the wagons come to have a distinctive smell, entirely their own. It is evident, I think, that the method of doing business must have released these odors in offensive form. It is said that Dr. Allen and the witness Joffer testified that they were inspectors of the health department, and visited these premises in their official capacity, and found no offensive odors about them. It would have been more satisfactory if Dr. Allen had told the court the time of day he was there, and whether the defendants were then engaged in handling Limburger cheese. Upon this subject he is silent, and, taking his testimony as a whole, it amounts to no more than saying that he inspected the premises; that he found the smell of cheese, but discovered no objectionable odor. The only cheese he saw was American dairy cheese, and of this no complaint is made. His testimony would have been true and consistent, had he found and smelled of Limburger; and then said that he found no objectionable odor. It might not have been to him. The popular prejudice, however, seems to be otherwise. The other witness adds nothing to the strength of the testimony of Dr. Allen. As I view the evidence, the defendants overthrow the effect of this testimony when they describe what they keep, and how the business is carried on. That such business constitutes a nuisance in a residential district, I think, is clearly established by such testimony. It is said that the business is lawful and carried on in a proper manner. This is not the question. A rendering factory is lawful, and may be carried on in a proper manner, and yet be a nuisance, even though no more odor emanates from it than such as is necessarily incidental to the business. The question is, is the place proper for the business where it is established? The present place is a residential neighborhood, and I think that the evidence fairly shows that this cheese business substantially destroys the neighborhood for that purpose. And, even though it be conceded that the business is no more offensive than such as is incidental to its proper conduct, yet it is a nuisance, as located, and as such it ought not to be permitted. Rosenheimer v. Light Co., 36 App. Div. 1, 55 N. Y. Supp. 192; Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537; Garvey v. Railroad Co., 159 N. Y. 323, 54 N. E. 57.

I am of opinion, therefore, that the court erred in dismissing the complaint upon the evidence in this case. If, however, I am wrong

in this conclusion, it seems clear to me that fatal error was committed by the court in rejecting competent testimony bearing upon the issues presented. It is the averment of the complaint that the act of the defendants caused a nauseating and penetrating stench, tainting and corrupting the atmosphere so. as to render the apartments in plaintiffs' building unfit for habitation, and greatly depreciating them in value. In support of this averment the plaintiffs called the janitor of the building, who had authority to show and rent the flats, and asked if any tenants had left since the coming of defendants' business into the neighborhood. This was objected to by the counsel for the defendants upon the ground that it was incompetent and immaterial, and that the defendants must be connected with it. The court so held, and ruled that such connection would have to be made by producing the tenants themselves, to which ruling the plaintiffs excepted. The plaintiffs then asked if the tenants, when they left, stated as their reason that they did so on account of the smell of cheese. This was objected to by the defendants as incompetent. The objection was sustained, and the plaintiffs excepted. This was followed by the question, "Did the tenants who left complain of the smell of the cheese?" and was also excluded, and the plaintiffs excepted. These rulings, I think, constituted error. It was competent to show that tenants left this building after the defendants had established their business in the neighborhood. Such testimony bore directly upon the issue presented by the complaint,—that the defendants' acts had rendered the same uninhabitable. It has been held competent, in actions of this character, to show that tenants have refused to remain in apartments affected thereby unless the rent was reduced, and also to show, as a part of the transaction, that the tenant stated the reason which induced his action, and that the reason was admissible as part of the res gestæ. Hine v. Railroad Co., 149 N. Y. 154, 43 N. E. 414. There can be no difference in principle between showing that a tenant applied for and obtained a reduction in rent on account of the nuisance, and to show that he vacated the premises entirely. In both cases the character of the proof is the same, and bears upon the issue involved in like manner. It is evident that the learned court below did not hold that evidence that tenants left plaintiffs' premises was incompetent. On the contrary, his ruling clearly indicates that he regarded such testimony as proper, but held that it must be proved by the tenants themselves, and that the means proposed by which it was to be established was improper. If tenants left, that was a fact of which testimony could be given by any person having knowledge of it. It was one of the steps by which plaintiff established his cause of action. The other step in the process was the cause which induced them to leave. If that cause was produced by the act of the defendants, then it bore directly upon the issue, and tended to support plaintiffs' claim. The res gestæ was the character of the defendants' business, and the effect which it produced. This embraced two features,—one, the act itself, as constituting the nuisance, and its effect, showing it to be actionable; and the other, the damage sustained. The testimony which the question sought to elicit bore directly upon both these

issues, as both constituted the res gestæ. Under such circumstan-ces it was not only competent to show the fact, but it was also com-petent to show the declaration of the tenant respecting the fact made at the time, as it was a part of one and the same transaction. Waldele v. Railroad Co., 95 N. Y. 274; Hine v. Railroad Co., supra. Such declarations are not condemned as hearsay, but are admissible as evidence of the principal fact; the rule being that:

"When the act of a party may be given in evidence, his declaration made at the time, and calculated to elucidate and explain the character and quality of his act, and so connected with it as to form one transaction, and so as to derive credit from the act itself, are admissible in evidence."

That is precisely this case. The form of the questions in the present case is somewhat objectionable, on account of their leading character, but the form was undoubtedly provoked by the statement of the court that the testimony could only be proper when elicited from the tenants themselves. No objection was interposed on account of the leading character of the questions, and it is quite clear that such objection was not intended or considered.

For these reasons, I think the judgment should be reversed, and a new trial granted, with costs to appellants to abide event.

INGRAHAM, J., concurs.